UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHARLES JOHNSON, JR.,

        Plaintiff,

   v.

CIVIL ACTION NO.
1:21-cv-01977-JPB

CITY OF ATLANTA and GARRETT
ROLFE,

        Defendants.

## ORDER

This matter is before the Court on Defendant City of Atlanta's ("City")

Motion to Dismiss ("City's Motion") (ECF No. 5) and Defendant Garrett Rolfe's

("Rolfe") Motion for Judgment on the Pleadings ("Rolfe's Motion") (ECF No. 16).

Having reviewed and fully considered the papers filed therewith, the Court finds as

follows:

## I.   BACKGROUND

Plaintiff Charles Johnson, Jr. ("Johnson") filed a complaint against the City

and Rolfe alleging that Rolfe applied excessive force against him during an arrest

that occurred in May 2020.  The allegations in the Complaint are sparse, and the

causes of action are unclear and seem to overlap.  From what the Court can gather,

Johnson pleads the following counts:  Count I:  constitutional claims (United States

and Georgia) for unreasonable search and seizure and abuse of arrestees plus a state law claim for battery; Count II: failure to supervise against the City; Count III: constitutional claim (Georgia) for unreasonable search and seizure and a willful intent to injure; Count IV: constitutional claim (Georgia) for abuse; and Count V: state law battery claim.

As an initial matter, Rolfe attached as exhibits to his Answer copies of his body and dashboard camera recordings of the incident. Rolfe's Motion is based on those recordings. Johnson, however, argues that the video recordings should not be considered on a motion for judgment on the pleadings because he did not refer to them in his Complaint, and they are not central to his claims.

In *Cantrell v. McClure*, the Eleventh Circuit Court of Appeals explained that the district court's consideration of "undisputedly authentic footage was proper" in resolving a motion for judgment on the pleadings where the video recording was attached to the defendant's answer. 805 F. App'x 817, 819 n.2 (11th Cir. 2020). The court reiterated the well-settled principle that "[a] court may consider an exhibit attached to a pleading, or a motion to dismiss, without converting the motion into one for summary judgment, where the exhibit is central to the plaintiff's claim, and its authenticity is unchallenged." *Id*. The court noted that it was "capable of construing all ambiguities in the video footage in favor of [the]

plaintiff, just as it must, at [the motion for judgment on the pleadings] stage, [and] construe in [the] plaintiff's favor all ambiguities in the written pleadings." *Id*.  The court confirmed that the district court is "not required to ignore that footage." *Id*.

Here, like in *Cantrell*, the video recordings are central to Johnson's claim in that they constitute critical evidence that will invariably be used to evaluate Johnson's claims.  Johnson also does not challenge the authenticity of the recordings.  Indeed, the video recordings together comprise four hours of "undisputedly authentic footage" of what occurred that night and provide a sufficient basis upon which to resolve Rolfe's Motion.

The Court is not persuaded by Johnson's attempt to distinguish *Cantrell* on the grounds that the videos in that case were referenced in the complaint. Although the district court in *Cantrell* did state that it considered the video in part because it was referenced in the complaint, the Eleventh Circuit's affirmance of the district court's opinion did not state such a qualification.

The other cases Johnson cites are either out of circuit or can be distinguished on their facts.  For example, in *Channel v. Smith*, the district court declined to rely on the video recording to resolve the excessive force claim because it depicted "less than ten seconds of interaction between the parties."  No. CV 317-060, 2018 WL 1463356, at *2 (S.D. Ga. Mar. 23, 2018).  The court stated that it could not

"make a reasonableness determination precluding [the] [p]laintiff's claim as a matter of law based upon this ten-second interaction alone." *Id*.

*Channel* is not analogous to this case because, here, Rolfe provided two simultaneous video recordings of the incident—from two different angles—lasting a total of approximately four hours. The relevant facts are thus clearly presented in the video recordings. *Cf. Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (stating in the context of summary judgment that the court "should . . . view[] the facts in the light depicted by the videotape"). Accordingly, the Court will consider the video recordings in resolving Rolfe's Motion.

The relevant facts as presented by the parties or as depicted on the video recordings are as follows:

On the evening of May 22, 2020, Johnson was driving with a friend on Interstate 85 when Rolfe stopped him. Rolfe reported that Johnson was driving at eighty-five miles per hour in a fifty-five mile per hour zone. It was raining, and the roads were wet. Johnson was under the influence of alcohol and had an open container of alcohol in his vehicle.

Rolfe interviewed Johnson and his passenger and was polite and professional during the exchange. Johnson denied he had been drinking but Rolfe observed the open container in the back of the car. Rolfe asked Johnson to exit the

vehicle, and Johnson was compliant and polite.  Johnson also complied with

Rolfe's request to conduct a pat down search.

Rolfe spent the next approximately ten minutes attempting to conduct a DUI

investigation of Johnson.  Johnson was not belligerent or violent, but he was not

fully cooperative.  He interrupted Rolfe many times, earnestly pleading (almost in

tears) to go home.  He stated that he could not afford to lose his CDL license,

which had just been returned to him, and he was getting his life on track.

Rolfe was able to administer a field gaze test to Johnson, which involved

Johnson using his eyes to follow Rolfe's finger, but Johnson refused to take any

further tests.  He got into position for a walk and turn test but refused to take the

test.  Johnson continued to plead with Rolfe to allow him to go home over the next

approximately four minutes.

Rolfe then suggested the one leg stand test, and, again, Johnson got into

position but engaged in a back and forth discussion with Rolfe that lasted several

minutes.  He ultimately refused to take the test.  He expressed that he did not want

to take the sobriety tests because he had anxiety, and he was going through a tough

relationship problem.

Rolfe then offered to administer a breath test instead but Johnson, again,

refused, stating that he was afraid of failing the test and what that would mean for

his license.  He continued to plead with Rolfe to allow him to go home.  Johnson eventually expressly stated that he would not submit to further tests.

Rolfe thereafter informed Johnson that his refusal would force Rolfe to take action based on the facts that he did have, *i.e.*, that Johnson was speeding in unsafe conditions; he lied about drinking; he had an open container in his car; he was exhibiting signs of impairment; and he was refusing further testing.

About one minute later, Rolfe told Johnson to turn around and put his hands behind his back.  Rolfe grabbed Johnson's left arm and guided him to stand behind Johnson's car.  Johnson moved with Rolfe to the car but continued to plead his case.  He told Rolfe that he would now take the test.

As Rolfe tried to handcuff Johnson, Johnson kept moving his arms, causing Rolfe to repeatedly tell him to put his hands behind his back and to stop pulling away.  Rolfe then swung Johnson around with Rolfe's arm wrapped around Johnson and threw him to the ground.  Rolfe's arm was trapped under Johnson's body when Johnson and Rolfe hit the ground.  Rolfe landed partially on top of Johnson.  This maneuver took less than five seconds.

When on the ground, Johnson continued to refuse to give his hands to Rolfe for handcuffing, despite Rolfe's repeated commands to do so.  Johnson's passenger, who was off camera, could be heard asking Johnson to "calm down."

Johnson finally allowed Rolfe to handcuff him.  About twenty seconds elapsed between the time Johnson hit the ground and when he was fully secured.

Once Johnson was handcuffed, Rolfe carefully helped him to stand up and walked him to the police vehicle.  At that point, Johnson told Rolfe that Rolfe had dislocated his shoulder.  Rolfe asked Johnson twice whether he wanted an ambulance, and Johnson declined.

A supervisor was called to the scene, and Rolfe explained that he wrapped his arm around Johnson and placed him on the ground.  In response to further questioning from the supervisor, Rolfe stated that he used "moderate" force; the maneuver was a "takedown;" and he landed on top of Johnson.  Rolfe further explained that the maneuver was more like a toss or a throw.  The supervisor asked whether it was a "hip toss," and Rolfe agreed.

Rolfe seeks dismissal of Johnson's federal claims on qualified immunity grounds because he argues that the use of force was minimal and not excessive as a matter of law, and Johnson failed to provide clearly established law that his constitutional rights had been violated.

Rolfe seeks dismissal of Johnson's state law claims on the grounds of official immunity because he argues that Johnson cannot show the requisite intent to cause harm.

## II.   DISCUSSION

### A.   Legal Standard

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citation and punctuation omitted).  In analyzing whether a party is entitled to judgment on the pleadings, a district court must "accept as true all material facts alleged in the non-moving party's pleading[] and . . . view those facts in the light most favorable to the non-moving party." *Id*.  "The ultimate question on a motion for judgment on the pleadings under Rule 12(c) is the same as on a motion to dismiss under Rule 12(b)(6)—whether the complaint states a claim for relief." *Powers v. Sec'y, U.S. Homeland Sec.*, 864 F. App'x 754, 757 (11th Cir. 2021).

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Traylor v. P'ship Title Co.*, 491 F. App'x 988, 989 (11th Cir. 2012).  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation and citation

omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that a complaint does not suffice "if it tenders 'naked assertions' devoid of 'further factual enhancement'" (alteration omitted) (quoting *Twombly*, 550 U.S. at 557)).

Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "This standard does not require a party to plead facts with such particularity to establish a significant probability that the facts are true, rather, it requires a party's pleading of facts to give rise to a 'reasonable expectation that discovery will reveal evidence [supporting the claim].'"  *Burch v. Remington Arms Co.*, No. 2:13-cv-00185, 2014 WL 12543887, at *2 (N.D. Ga. May 6, 2014) (alteration in original) (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 570 (dismissing complaint because the plaintiffs did not state facts sufficient to "nudge[] their claims across the line from conceivable to plausible").

At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678, and must "'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,'" *Traylor*, 491 F. App'x at 990 (quoting *Speaker v. U.S. Dep't of Health & Hum. Servs.*, 623 F.3d 1371, 1380 (11th Cir. 2010)).

B.     **Analysis**

The doctrine of qualified immunity protects government officials from civil liability as long as they were acting within the scope of their discretionary authority and unless their conduct violated the plaintiff's federal constitutional rights as demonstrated by clearly established law. *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). "The defense of qualified immunity aims to strike a balance between 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Taylor v. Taylor*, 649 F. App'x 737, 742 (11th Cir. 2016). The burden is on the defendant to raise the defense, and once the defendant meets the burden, the burden shifts to the plaintiff to show that qualified immunity should not apply. *See Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009).

Courts in the Eleventh Circuit conduct a two-step inquiry to decide whether qualified immunity should be granted. *See Shuford v. Conway*, 666 F. App'x 811, 815 (11th Cir. 2016). A defendant is entitled to qualified immunity unless the plaintiff shows that: (1) the defendant violated a federal statutory or constitutional right and (2) the right was clearly established when the violation occurred. *Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019).

"'Both elements must be satisfied for an official to lose qualified immunity.'" *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011) (citation omitted).  However, "the two steps do not have to be analyzed sequentially." *Id*.  If the law was not clearly established, the court need not decide if the defendant actually violated the plaintiff's rights, although the court is permitted to do so.  *See id.*; *Maughon v. City of Covington*, 505 F. App'x 818, 821 (11th Cir. 2013) (stating that "[the court] need not conduct [the] qualified immunity analysis in any specific order; rather, [the court is] permitted to exercise [its] sound discretion in deciding which prong of [the] inquiry to address first").

With these principles in mind, the Court turns to the substance of Johnson's claims.

### 1.      Federal Excessive Force Claims

With respect to Johnson's excessive force claim, Rolfe asserts the qualified immunity defense.[1]  He argues that he did not use excessive force to effectuate the arrest where Johnson had been drinking and speeding; he refused to follow directions while standing on the side of a busy interstate highway with traffic moving at high rates of speed; he was told seven times to put his hands behind his back and four times to stop turning around; Rolfe had exhausted his verbal options

---

[1] Johnson does not dispute that Rolfe was acting within his discretionary authority.

to get Johnson to comply; and the only way to reduce the risk of injury from oncoming traffic was to take Johnson to the ground.  Johnson further argues that the video recordings clearly show that the arrest was executed with the minimal effort and amount of force necessary to complete the task.

Rolfe also asserts that Johnson has not cited clearly established, materially similar case law that indicates Rolfe's conduct was wrongful at the time of the arrest.

Johnson, on the other hand, focuses primarily on what he describes as "proportionality."  He asserts that driving under the influence is a misdemeanor and that he did not pose a threat to Rolfe or anyone else.  He also argues that there was no risk of flight and that he was standing peacefully outside his car pleading with Rolfe.

### a.      Whether the use of force was *de minimis*

"Determining whether the force used in a particular seizure was excessive and therefore unreasonable under the Fourth Amendment requires a court to consider the 'nature and quality' of the intrusion on the individual's Fourth Amendment interests against the countervailing government interest at stake." *Cantu*, 974 F.3d at 1228-29.  However, as the Supreme Court of the United States has explained, "the right to make an arrest or investigatory stop necessarily carries

with it the right to use some degree of physical coercion or threat thereof to effect

it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Therefore,

> [n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id*. at 396-97 (internal punctuation and citation omitted).

For example, in *Taylor*, the Eleventh Circuit found that it was not

unreasonable for the officer to grab a resisting plaintiff without warning and slam

her headfirst against a patrol car several feet away prior to handcuffing her. 649 F.

App'x at 746. The court reasoned that this "'Circuit has recognized that some use

of force by a police officer when making a custodial arrest is necessary and

altogether lawful, regardless of the severity of the alleged offense.'" *Id*. (citation

omitted) This level of force is referred to as "*de minimis*." *Id*. It is insufficient to

support an excessive force claim and is lawful even when the use of force was

unnecessary. *Id*.

Applying the reasoning of these cases here, the Court finds that the level of

force Rolfe used was *de minimis*. As set forth above, the video recording shows

that while it is true that Johnson was not threatening Rolfe and was rather pleading

with Rolfe to let him go home, it is also true that Rolfe spent approximately ten

minutes attempting to conduct a DUI investigation of Johnson.  Rolfe tried to initiate different tests, and Johnson refused to take them.  Johnson eventually expressly told Rolfe that he would not submit to a test.

At that point, Rolfe warned Johnson that Rolfe would have to take action based on the facts that he did have.  Rolfe proceeded to arrest Johnson and told him multiple times to put his hands behind his back and stop moving.  Johnson did not comply.  To effectuate the arrest, Rolfe swung Johnson around and took him to the ground in a maneuver that took less than five seconds.  Rolfe's arm was wrapped around Johnson and was trapped under Johnson when they both fell.

Based on these facts, the Court finds that the force used was "altogether lawful," *Taylor*, 649 F. App'x at 746, and is insufficient to support a claim for excessive force.  *See Horn v. Barron*, 720 F. App'x 557, 563–64 (11th Cir. 2018) (finding that the force used was *de minimis* because (i) even assuming that the plaintiff was "totally compliant," the officer was allowed to use some force in effecting the arrest; and (ii) even if the force applied was unnecessary, it was not unlawful, since the plaintiff was not restrained at the time).  The Court is not persuaded that Rolfe acted unreasonably in making the arrest and allows for the fact that Rolfe had to take steps to handle a non-cooperating suspect.

The cases Johnson cites for a different result are inapposite.  For example, in *Longino v. Henry County*, the police officers entered the plaintiff's home and grabbed him from behind without any notice or warning, and they dragged him to his backyard where they punched him several times.  791 F. App'x 828, 831 (11th Cir. 2019).  There was no evidence that the plaintiff resisted arrest.  *Id*. at 831-32.  Indeed, he did not have the opportunity to do so under the circumstances.  Similarly, in *Fils*, the plaintiff did not resist arrest, and he was not given any "verbal warnings or direct instructions" before he was tased.  647 F.3d at 1280–81.

In contrast, Rolfe spent a long time attempting to administer the DUI test to no avail.  He warned Johnson that his refusal would force Rolfe to take alternate action.  Rolfe then instructed Johnson to put his hands behind his back.  *Longino* and *Fils* are thus simply not on point and do not support the conclusion that Rolfe's actions in this case were unreasonable.

In all, because the Court finds that the level of force used in this case was *de minimis*, Johnson has failed to show that his Fourth Amendment rights were violated.

### b.    Whether the use of force was reasonable

Even if the use of force was greater than *de minimis*, the Court finds that it was reasonable.

In determining whether the force used in a particular case was proper, courts evaluate the reasonableness of the force "'from the perspective of the reasonable officer on the scene' without the benefit of hindsight." *Fils*, 647 F.3d at 1287.  As such, reasonableness "is not capable of precise definition or mechanical application [and] its proper application requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396.

Key factors used to determine whether the force used in a particular case was reasonable are "'the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight.'" *Smith*, 834 F.3d at 1294.  Courts also sometimes assess the need for force to be applied; the amount of force applied in light of the nature of the need; and the severity of the injury. *See, e.g.*, *Hinson v. Bias*, 927 F.3d 1103, 1117 (11th Cir. 2019).  Regardless, Eleventh Circuit decisions "'demonstrate that the point at which a suspect is handcuffed and poses no risk of danger to the officer is often the pivotal point for excessive force claims.'" *Scott v. Battle*, 688 F. App'x 674, 677 (11th Cir. 2017).

In this case, Rolfe does not dispute that the crime for which Johnson was arrested (driving while under the influence) is a misdemeanor.  Although Rolfe does not claim that Johnson was a threat to him, he points out that Johnson had

been drinking and speeding on a wet roadway; he had resisted arrest while standing on the side of a busy interstate highway; and Rolfe had exhausted verbal efforts to get Johnson to cooperate.  Rolfe argues that his only remaining option to reduce the risk of winding up in the lanes of traffic was to take Johnson to the ground.

The nature and sequence of these events support the conclusion that Rolfe used the amount of force necessary to effectuate the arrest and nothing more.  The key question is "'whether [Rolfe's] actions [were] 'objectively reasonable' in light of the facts and circumstances confronting [him]" or, alternatively, "whether the force used was reasonable [when] viewed from the perspective of a 'reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"  *Hall v. McGhee*, 762 F. App'x 837, 841 (11th Cir. 2019).  The Court cannot conclude that a reasonable officer confronting the sequence of events that occurred would agree that Johnson was not resisting arrest or that the use of force was unreasonable or unlawful.  *See Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000) (stating that "'qualified immunity applies unless application of the standard would inevitably lead every reasonable officer in [the defendant's position] to conclude the force was unlawful'" (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993), *modified* 14 F.3d 583 (11th Cir. 1994))).

While it is quite unfortunate that Johnson suffered significant injury as a result of the incident, the severity of his injury cannot tip the scales of the Court's analysis in his favor. *See Crenshaw v. Lister*, 556 F.3d 1283, 1293 (11th Cir. 2009) (reversing the district court's finding of a constitutional violation because the district court placed "disproportionate" weight on the severity of the plaintiff's injury).

In sum, viewing the evidence in the light most favorable to Johnson, the Court finds that the level of force Rolfe used in arresting Johnson was objectively reasonable under the Fourth Amendment. Therefore, Rolfe is entitled to qualified immunity on Johnson's federal claims. Although this finding is sufficient to dispose of those claims, the Court will nevertheless proceed to the second prong of the qualified immunity test as additional support for its finding that the defense applies here.

### c.      Whether the law was clearly established at the time of the incident

As set forth above, a plaintiff can satisfy the second prong of the qualified immunity test by citing to either case law with indistinguishable facts or a broad principle within the Constitution, statute or applicable case law. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). A plaintiff can also argue that the

defendant's conduct was so egregious that it violated the plaintiff's rights, even in the absence of supporting case law.  *See id.*

Here, Johnson cites to and block quotes from a bevy of cases with little attempt to explain to the Court how those cases apply here.  In any event, the Court agrees with Rolfe that none of the cases Johnson cites shows that, at the time of the incident, the law was clearly established that Rolfe's actions in this case were unlawful.  To the extent Johnson's cases even address excessive force claims, they concern plaintiffs who did not resist arrest, which is unlike what happened here.

Based on the foregoing analysis, the Court finds that Johnson has not provided apposite clearly established law as necessary to overcome Rolfe's qualified immunity defense.  This is an additional, independent reason for the Court's finding that Rolfe is entitled to qualified immunity with respect to Johnson's federal claims.

## 2.    State Law Claims

Johnson argues that Rolfe is liable for battery and violation of the Georgia Constitution.

Rolfe seeks dismissal of Johnson's claims because he argues that Johnson cannot show that Rolfe intended to "do any wrong."  ECF No. 16-1 at 18.  Johnson

responds that the record reflects the requisite intent because Rolfe threw him to the ground "intentionally and without provocation."  ECF No. 18 at 21.

Under Georgia law, "[t]he doctrine of official immunity . . . protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption."[2]  *Cameron v. Lang*, 549 S.E.2d 341, 344 (Ga. 2001).  The bar for proving the requisite intent or malice is high.

> In the context of official immunity, actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact. Actual malice does not include implied malice, or the reckless disregard for the rights and safety of others.  A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs.  Likewise, the phrase actual intent to cause injury has been defined in a tort context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury.

*Selvy v. Morrison*, 665 S.E.2d 401, 404–05 (Ga. Ct. App. 2008).  Where there is no evidence in the record of malice or an intent to injure, summary judgment on the basis of official immunity is proper.  *See Cameron*, 549 S.E.2d at 344.

Here, Johnson's claim turns on whether Rolfe intended to injure Johnson's shoulder.  In other words, Johnson must show that Rolfe acted with the deliberate

---

[2] As set forth above, Johnson concedes that Rolfe's actions were discretionary in scope.

intent to specifically hurt Johnson's shoulder.  Yet, the video recordings are devoid of such evidence.

As set forth above, the record shows that Rolfe resorted to arresting Johnson only after he repeatedly refused to comply with Rolfe's instructions.  Johnson was injured when Rolfe took him to the ground to effectuate the arrest.  There is no indication that Rolfe intended to hurt Johnson.

Accordingly, the Court finds that Rolfe is entitled to official immunity with respect to Johnson's state law claims.

## III.   <u>CONCLUSION</u>

Based on the foregoing analysis, the Court finds that Rolfe is entitled to qualified immunity on Johnson's federal constitutional law claims and official immunity on Johnson's Georgia constitutional and tort claims.  As a result, the Court **GRANTS** Rolfe's Motion (ECF No. 16).

Based on the Court's finding that Rolfe did not violate Johnson's constitutional rights, the Court finds that it is appropriate to dismiss Johnson's failure to supervise claims, which he brings against the City presumably under *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978).  *See Joyce v. Crowder*, 509 F. App'x 969, 970 (11th Cir. 2013) (affirming the district court's dismissal of the plaintiff's claims under *Monell* because "there was no

underlying constitutional violation"); *McDowell v. Brown*, 392 F.3d 1283, 1289

(11th Cir. 2004) (stating that to allege a § 1983 claim against a city or county, a

plaintiff must show "(1) that [his or her] constitutional rights were violated; (2) that

the municipality had a custom or policy that constituted deliberate indifference to

that constitutional right; and (3) that the policy or custom caused the violation").

Therefore, the City's Motion (ECF No. 5) is **GRANTED**.[3]

The pending Motion to Stay (ECF No. 11) is **DENIED** as moot. The Clerk

is **DIRECTED** to close this case.

**SO ORDERED** this 21st day of March, 2022.

J. P. BOULEE
United States District Judge

---

[3] The City's Motion is granted also for the independent reason that the threadbare
allegations in the Complaint do not sufficiently allege that the City had a custom or
policy that constituted deliberate indifference to Johnson's constitutional rights and
that such policy or custom caused Rolfe's alleged violations. *See Twombly*, 550
U.S. at 555 (stating that "a plaintiff's obligation to provide the grounds of his
entitlement to relief requires more than labels and conclusions"); *Iqbal*, 556 U.S. at
678 (stating that a complaint does not suffice "if it tenders 'naked assertions'
devoid of 'further factual enhancement'" (alteration omitted) (quoting *Twombly*,
550 U.S. at 557)).